UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| BOUABID WAHBY; and MFN WAHBY, INC., d/b/a GI JOES, <br>    Plaintiffs, <br><br> v. <br><br> UNITED STATES; and UNITED STATES DEPARTMENT OF AGRICULTURE FOOD AND NUTRITION SERVICE, <br>    Defendants. | C.A. No. 24-079-JJM-PAS |

ORDER

Plaintiffs Bouabid Wahby and MFN Wahby, Inc., d/b/a GI Joes ("GI Joes") challenges its permanent disqualification from the Supplemental Nutrition Assistance Program ("SNAP") by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). GI Joes was banned from SNAP for engaging in trafficking of Electronic Benefit Transfers ("EBT"). Trafficking is defined as "[t]he buying, selling, stealing or otherwise effecting an exchange of SNAP benefits issued and accessed via [EBT] cards … for cash or consideration other than eligible food." 7 C.F.R. § 271.2; 7 U.S.C. § 2021(b)(3)(B).

Before the Court is the United States' Motion for Summary Judgment, arguing that the USDA's decision to disqualify GI Joes was soundly supported by the record and neither arbitrary nor capricious as a matter of law. ECF No. 8. GI Joes objects. ECF No. 14. For the reasons stated below, the Court GRANTS the United States' motion.

I.  BACKGROUND

Mr. Wahby owns and operates MFN Wahby, Inc., which does business as GI Joes. This convenience store is 920 square feet and located at 445 Smith Street in Providence, Rhode Island. GI Joes opened for business on March 15, 2022 and was authorized to participate in the SNAP a month later. During the six-month period from October 2022 through March 2023 (the "Review Period"), GI Joes' total dollar volume for SNAP redemptions was $65,992.74 in 5,559 transactions. During the Review Period, there were 108 SNAP-authorized stores located within a two-mile radius of GI Joes.

The Anti-Fraud Locator Using Electronic Benefit Retailer Transactions program ("ALERT"), the system used to identify and track benefits fraud, flagged statistically unusual EBT transactions at GI Joes, which appeared suspicious for trafficking in SNAP benefits. An FNS independent contractor ("FNS Contractor") then visited the store, took photographs of GI Joes' exterior and interior, and observed its operation, stock, facilities, and pricing. The store visit, which Mr. Wahby consented to, confirmed that GI Joes was stocked with a variety of mostly inexpensive staple food items, limited canned goods, and dairy, as well as single-serve snack food items. GI Joes also sold non-eligible food items such as tobacco, household goods, paper products, cleaning supplies, pet food, and health and beauty items. GI Joes had one Point of Sale ("POS") device, one optical scanner, and no shopping carts or handheld baskets. The checkout counter was small with limited room to set down

items for purchase. GI Joes sold no fresh meat and did not offer any grocery/meat bundles, deals, bulk sales, specials, or specialty items.

An FNS Program Specialist analyzed the EBT data including the shopping habits of SNAP recipients during the Review Period and compared them to EBT transactions at similarly sized convenience stores in Providence County during the Review Period. The Program Specialist also reviewed the shopping patterns of select households that were involved in suspicious transactions were also shopping at larger, better stocked stores, often on the same day they shopped at GI Joes. The Program Specialist determined that GI Joes' EBT data was indicative of trafficking.

FNS sent Mr. Wahby a letter (the "Charge Letter") charging GI Joes with trafficking within the meaning of 7 C.F.R. § 271.2, i.e., exchanging SNAP benefits for "cash or consideration other than eligible food" and included three attachments that contained the EBT transactions FNS considered to be "clear and repetitive patterns of unusual, irregular and inexplicable activity. . ." FNS identified three distinct patterns of irregular EBT transactions: (1) a large number of transactions in repeating dollar values; (2) multiple transactions by the same household in a short time period; and (3) a high number of large EBT transactions based on the observed store characteristics and food stock. There is no dispute that the EBT data in the Charge Letter's three attachments occurred at GI Joes on the dates, times, and in the amounts set forth therein.

Before a final determination, FNS advised Mr. Wahby of his right to respond to the charges, and to produce evidence to refute both the liability finding and the

3

proposed sanction. 7 C.F.R. § 278.6(b)-(c). The Charge Letter also advised that, in some cases, FNS may impose a civil monetary penalty ("CMP") in lieu of permanent disqualification and notified Mr. Wahby of the detailed steps to be considered for a CMP. 7 C.F.R. § 278.6 (b)(2)(i). Mr. Wahby responded to the Charge Letter and provided 164 pages of invoices, 27 pages of receipts, and 37 photographs to rebut the allegations of trafficking and asserted that "the store's activities involve nothing more than routine transactions." He also requested a CMP as an alternate penalty.

The FNS Program Specialist reviewed Mr. Wahby's responses, considered the EBT transactions given GI Joes physical makeup and inventory and determined that GI Joes lacked the high-priced inventory or check-out mechanisms necessary to process sales at the speed and total dollar values to achieve the sales totals in the EBT transaction reports. Moreover, the average number of EBT transactions at GI Joes was 173% greater than those at comparable stores. The FNS also reviewed the invoices, receipts, and photographs Mr. Wahby submitted, and concluded that his justifications failed to adequately explain the suspect transactions.

FNS informed Mr. Wahby that GI Joes was permanently disqualified from participation in the SNAP in accordance with 7 C.F.R. § 278.6(e)(1) for trafficking (the "Determination Letter"). The Determination Letter also advised Mr. Wahby that he was not eligible for a CMP in accordance with 7 C.F.R. § 278.6(i), as he did not submit any evidence to demonstrate that the store had established and implemented an effective compliance policy and program to prevent violations of the SNAP.

4

Mr. Wahby requested an administrative review and submitted an additional letter in support of the review request.

The Administrative Review Officer ("ARO") reviewed all the evidence submitted, along with the EBT transaction analysis, together with observations made during the store visit. The ARO found substantial evidence that the questionable transactions during the Review Period in the three attachments had characteristics and displayed patterns that were inconsistent with legitimate sales of eligible food, particularly for a store that size and type. The Agency issued a Final Agency Decision and affirmed the permanent disqualification. Mr. Wahby filed this suit for judicial review. ECF No. 1.

II.  ANALYSIS

Summary judgment can be granted only when the Court finds that there is no genuine issue of material fact and that the undisputed facts give rise to an entitlement to judgment as a matter of law. *Wilson v. Moulison N. Corp.*, 639 F.3d 1, 6 (1st Cir. 2011). The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his [or her] favor. *Id.* However, the non-moving party "must point to 'competent evidence' and 'specific facts' to stave off summary judgment." *Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011) (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). A summary judgment motion cannot be defeated by "conclusory allegations, improbable inferences, acrimonious invective, or rank speculation." *Ahern v. Shinseki*, 629 F.3d 49, 54 (1st Cir. 2010).

The Court must conduct a de novo review to "determine the validity of the questioned administrative action." 7 U.S.C. § 2023(a)(15). This de novo review, however, is limited to the USDA's determination of whether a SNAP violation took place. *Broad St. Food Mkt., Inc. v. United States*, 720 F.2d 217, 220 (1st Cir. 1983). If the Court finds that the USDA's finding was correct, review of the sanction that the USDA imposed is limited to whether that sanction was arbitrary or capricious. *Id.* "[W]hen a store challenges the USDA's determination that the store trafficked in SNAP benefits, the store bears the burden of proving by a preponderance of the evidence that its conduct was lawful." *Irobe v. U. S. Dep't of Agric.*, 890 F.3d 371, 378 (1st Cir. 2018).

The USDA submits that no genuine issue of material fact exists with respect to GI Joes' liability for trafficking. In support, it relies primarily on transaction reports derived from the EBT database, which analyzed all available statistical information concerning the store's handling of SNAP benefits during the four-month period from October 2022 through March 2023. Mr. Wahby contends that the USDA's motion should fail because the report provided no direct evidence of trafficking---no undercover operations, no witness testimony, no video surveillance, and no admissions by the store owner or employees; instead, it relied exclusively on transaction pattern analysis. He also submits potential reasons why the transactions were legitimate.

6

The Court has reviewed de novo the entire administrative record below, including GI Joes' rebuttals to the FNS's conclusions that it trafficked in EBT benefits, and its decision to disqualify GI Joes.  The ARO's report identified three categories of suspicious transaction patterns: 159 transactions totaling $6,876.56 in "repeated dollar values" (primarily in the $41-$46 range); 139 transactions totaling $5,215.18 involving "multiple transactions from individual households within a set time period"; and 347 transactions totaling $15,106.59 deemed "large based on the observed store characteristics and recorded food stock."  The caselaw firmly establishes that these categories of suspicious transactions are indicative of fraud.

The Court notes at the outset that Mr. Wahby does not dispute any of the facts that the FNS presented in its decision or in the United States' motion.  Mr. Wahby has not submitted any evidence to rebut the store-generated statistical evidence used to support the trafficking determination, but challenges these patterns that the ARO report flagged, arguing that these types of transactions are not atypical for SNAP benefits users.  *Id.* at 380 (a store owner fails in its burden where it does not "attempt[] to establish the bona fides of so much as a single transaction pinpointed by the agency (even though each of those transactions is clearly linked to a specific household).").

The Court now turns to the categories of evidence flagged as fraud.  As to the "repeated dollar values" category, 33 (21%) of the 159 transactions ended in $0.98, and almost half of the transactions in the $41 dollar range (47%) were for exactly $41.98.  FNS concluded that a high number of same-cent value transactions is a

7

pattern of trafficking because it was statistically unlikely that repeating dollar values would occur ending in .98 cents so often. Mr. Wahby argues that these numbers are due to his pricing strategy. As to "multiple transactions from individual households within a set time period," FNS identified 46 sets of transactions in which the same household made multiple purchases at GI Joes in short time periods. The time between the transactions ranged from 27 seconds to 48 hours. Mr. Wahby argues that these numbers are consistent with normal shopping patterns. As to the "large" category, FNS identified over 300 large EBT transactions at GI Joes during the Review Period, totaling $15,106. The average of the transactions in this category is $43.53, 399% higher than the average EBT transaction at comparable stores and higher than 85% of all convenience store EBT transactions. In response, Mr. Wahby argues that many of these transactions occurred at the beginning of the month when SNAP recipients typically shop and that the average flagged transaction was only slightly above the national average by his calculation.

In addition, GI Joes' total dollar volume for SNAP redemptions during the Review Period was 180% higher than at comparable stores. The ARO noted that these high dollar amount purchases were at odds with the inventory and set-up of the market. Mr. Wahby explains that GI Joes is in a poor community and serves as the only store accepting SNAP within walking distance for many households, but that assertion is contrary to the evidence that there were many SNAP-authorized stores in the same geographic area, where the households sampled did also shop during the Review Period.

Mr. Wahby's defenses to these patterns of transactions are essentially that they are indicative of recipients' shopping patterns and his pricing strategies. But GI Joes cannot sustain its burden by surmising what its customers may or may not be doing or by making unreasonable and impractical speculations about how hundreds of dollars of transactions could be completed between several seconds or minutes in a convenience store with minimal counter space, one POS machine, and no shopping carts. *See Eltaweel v. U. S. Dep't of Agric.*, C.A. No. 14-409-M-LDA, 2016 WL 1572880, at *3 (D.R.I. Apr. 18, 2016). And "[t]he large number of aberrational transactions reflected in the Store's EBT database are adequate to ground a strong inference of trafficking, especially given the Store's characteristics." *Irobe*, 890 F.3d at 380. In short, Mr. Wahby's explanations are unconvincing, conclusory, and very speculative in the face of the USDA's statistics.

Mr. Wahby did submit receipts and invoices for the Review Period, but these do not raise disputed issues of material fact in the face of the EBT data. First, receipts showing permissible EBT transactions cannot defeat summary judgment; "the mere fact that the Store bought some SNAP-eligible foodstuffs and sold them to SNAP-qualified households does not insulate it from a finding of trafficking. Merchants may conduct legitimate business side-by-side with unlawful trafficking." *Id.* at 381. Second, the ARO noted that Mr. Wahby did not submit all the receipts,[1] which it

---

[1] For example, of the 159 purchases with repeated dollar values, Mr. Wahby submitted 51 receipts (32.07%) of the 46 sets of 139 EBT transactions where individual households made multiple purchases within a short time period, he submitted receipts that accounted for 16 (34.78%) of the 46 sets and of the large transactions, he submitted only 75 (21.61%) of the 347 receipts.

9

deemed suspicious. And third, the inventory receipts he did submit do not support the EBT transactions at GI Joes during the Review Period. One example stands out. During the store visit in April, FNS observed that GI Joes did not have any infant formula in stock. Mr. Wahby purchased only 30 containers of Similac in total during the Review Period, and none were purchased in January or February 2023. But Mr. Wahby submitted 54 EBT transaction receipts for the purchase of 67 containers of Similac by SNAP customers for varied amounts, more than double the number purchased, as reflected in the invoices submitted. As the ARO concluded, this is indicative of SNAP benefits fraud. Therefore, on this record, the Court finds that Mr. Wahby fails to raise disputed issues of material fact sufficient to overcome the USDA's statistics and ultimately, its Motion for Summary Judgment.[2]

Now that the Court has found, based on a de novo review, that the USDA's finding that GI Joes engaged in trafficking as defined in 7 C.F.R. § 271.2 is valid, it will move on to review the permanent disqualification sanction. The Court will overturn the sanction only if it was arbitrary and capricious. *Broad St. Food Mkt.*, 720 F.2d at 220. Because the governing regulation, 7 C.F.R. § 278.6(e)(1), requires permanent disqualification for EBT trafficking, the Court cannot find that the

---

[2] Mr. Wahby raises other arguments relating to the procedures used to investigate and resolve USDA's claim against him. He argues that those procedures were not followed because the site visit documentation was inadequate, employees were not interviewed, and exculpatory evidence was disregarded. He also argues that the process is unconstitutionally vague due to undefined terms in the regulations and that he did not receive proper notice. Mr. Wahby's arguments on these fronts are cursory and undeveloped but also ineffective on this record. He was given proper notice throughout the process and relies here on the information he was provided.

USDA's sanction was arbitrary or capricious and upholds GI Joes' permanent disqualification.

III. CONCLUSION

"SNAP is an important part of the safety net woven by Congress for persons in need. The program's efficacy, though, depends in large measure on the good faith of both SNAP-authorized merchants and SNAP-qualified households." *Irobe*, 890 F.3d at 381. "When the evidence suggests that program rules are being flouted, agency action is appropriate." *Id.* Based on the undisputed evidence in the record and for the reasons stated herein, the USDA acted appropriately, and the Court GRANTS its Motion for Summary Judgment. ECF No. 8.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

May 13, 2025

11